Good morning, Your Honors. First, I apologize. I've got a really bad cough and the hiccups, so no offense intended. This is going to be a little difficult. You didn't want it to be bad enough. You feel like a six-year-old. Well, if you think of other things, you won't hiccup. We'll see if it works here. Well, I keep trying to think of reversal. That's what I have in mind. Okay. There you go. There are three issues that appellant has raised in this case. I intend to focus on the issue number three, the insufficiency of the evidence argument. But naturally, if the Court has questions about the other two, I'll be perfectly happy to answer those questions. This is a very unusual case for an insufficiency argument. It is unusual for at least two reasons. First, it's unusual because the State Appellate Court relied upon facts that the jury specifically rejected to affirm the appellant's conviction. Secondly, and most unusually, this is a case where the same justice of the same court of appeals in California viewed two cases, one the appellant's and one his co-defendant's, and viewing the same facts, interpreted them in opposite manners. In the Ramirez case, interpreted the facts favoring innocence, and in my client's case, interpreted the facts favoring guilt. Now, I've stated in my brief, and I'll state it one more time, I am not arguing that my client's conviction should be reversed because the State Court reversed the co-defendant's conviction. That is not the argument. I recognize that they are two separate cases with two separate evidentiary scenarios. What I am arguing is that the State Court of Appeals' interpretation of a very short factual scenario, which was exactly the same in both cases, and in my case, taking the same exact facts and inferring guilt, that that was an unreasonable determination of facts under 2244d2. Well, which one is unreasonable? Well, I think it's unreasonable to know. It seems to sound to me exactly like the argument you've disclaimed, which is that you can't have a decision-maker or, in this case, an appellate body reviewing facts reach different conclusions on the same facts. No, that's not what I'm arguing, Your Honor, with all due respect. I'm not arguing that because the conviction was reversed in one case, it should be reversed in both cases. What I'm arguing is that it's unreasonable to look at the same facts, the exact same facts, and draw inferences of guilt from those facts in one case and innocence from the other. What's unreasonable about it is the disparity between the two. And, of course, I'm also arguing that it's unreasonable for it to infer guilt in my client's case, but the mere fact that the Court was able to look at the same facts and find innocence. For instance, if the facts were that a man's walking down the street and there's a fire and then he starts running, and in one case, the Court rules that because the man is running from the scene of the fire, he must be summoning help to put out the fire, and in the other case, the Court rules because the man is running from the scene of the fire, he must be guilty of setting the fire and is running away to escape detection. If in that kind of a scenario, I think we'd all agree that it's unreasonable to draw opposite conclusions from the exact same set of facts. But that doesn't quite get you where you need to go, because it doesn't say that the determination in this case was unreasonable. It might have been the other case that was unreasonable. Well, I think what's unreasonable, interpreting this in the light of the standard of deference that's owed to a State court findings, I don't think that this Court should, under any circumstances, defer to the State court findings when the same State court came to two opposite conclusions. What that amounts to saying is that if a State court makes an incorrect decision in deciding the evidence is insufficient in any case, in every other case, it needs to say the same thing. No, that's not what I'm saying. What I'm saying is that if the same State court says that the car was blue in one case and looking at the same set of facts, says the car was red in another case, that that's unreasonable. That you can't have two facts interpreted in opposite ways when they're exactly the same. So does the second one automatically be the unreasonable one? Well, no. In other words, what I'm talking about is the level of deference that should be owed to the findings of fact here. In other words, it's my argument that overall there's insufficient evidence, but it's a twofold argument. One, under a deference, a very deferential standard. But as the Supreme Court reminded us last year in Miller L., deference doesn't mean abdication. It doesn't mean that this Court doesn't have the power to review the State court determination of facts and conclude that they're unreasonable. In this case, I would argue that they were unreasonable, because two things. First of all. But even if you're right, that takes you part of the way. Right. Then you've got to show that the evidence was insufficient. That's where I'm headed right now. What? That's where I'm headed right now. I had a feeling you were. Okay. First we have the jury rendered a verdict that Cipriano-Ramirez called Anna Mosqueda and said that he is coming over to take care of business. Then we have the appellate court interpreting that call to mean we. But here it's an unusual case, because here we have a very specific jury finding in writing saying that the call said he. Now, that was the linchpin, the only basis for connecting appellant with a conspiracy, the we versus he. And here we have a jury finding that's specifically contrary to the appellate court reasoning, which the appellate court doesn't even acknowledge. And under Taylor v. Maddox, where the State court doesn't even acknowledge contrary facts, significant and material facts, undermining confidence in the verdict, that's an unreasonable determination of facts. Are you saying that. Go ahead. The phone call is the only basis for assessing the sufficiency of the evidence? No, it's not. We do have the fact that there was a fight. The two allegedly moved back, which could show, I grant you, could show a couple of things. But as the shots were fired, they're moving back. Nobody seemed to be, nobody's yelling, hey, what are you doing? What's going on? Well. You have that plus the phone. I mean, it's not just the phone call itself. No, that's right. There was the scenario with the participants fighting and then one moving back. On the other hand, we also have the situation where the jury found that my client wasn't the shooter. And the eyewitness testimony that was presented to the jury was that he was the shooter. So what makes this case unusual is that you can't simply switch the players based upon the finding. In other words, you have the testimony at the trial placing appellant as having the gun shooting. But the jury rejected that finding. So then the appellate court said, well, it must have been the other guy who was the shooter. Well, be that as it may, you have to sometimes reconcile jury findings with opposite testimony, but you can't simply look at the same testimony and say, yeah, well, that must have been the other guy, and therefore, we can ascribe the actions of one person to another person based upon the jury finding. Because that's not what the testimony was. So we have a situation here where we have no evidence linking my client to the victim. No motive. No evidence linking my client to the victim. When you say no evidence linking, he was there. I mean, there's not much question about that. Right. Whether he was the shooter or not, he was there. Nobody reacted. A couple of inferences could be drawn, but there is some deference here. Nobody said, what's going on here? What are you doing? Well, the other two, whoever the shooter is, the other, everybody else steps back, lets him commit the act. They were all engaged in the fighting. And the court of appeals in the Ramirez case said, yeah, during the headlights look, he was startled by the fact the guy pulled out the gun. There's no evidence that he knew the guy had the gun. We're coming full circle because the fact that there is one inference drawn in one case doesn't mean we come back to Judge Clifton's question, and that is in Judge Ehrt. So why is one right? What did you throw out? It's not a question of one's right or one's wrong. It's a question of can you give deference to a decision of a State court. Ultimately, the deference is to the jury. Right. Well, the jury here found contrary to what the State court, appellate court found. The jury found that the ‑‑ If you want us to cut through to de novo review, that is go no deference to the State court. You still have the fundamental problem that for sufficiency of evidence, the standard is could any reasonable fact finder, could the jury have reasonably concluded based on the evidence presented. And at that point, it drops out entirely what the State court of appeals says. And with that finding in mind, Your Honor, the answer is no. There was no motivation for him taking a bow. There was no evidence that he was present when Cipriano made the call to Anna Mosqueda. We don't know that. The only evidence that the prosecution proffered for the conspiracy conviction was that he said we're coming over, implying that there were other people with him. But, in fact, the jury found that he said he. So we can't allege any prior knowledge. We can't conclude there's any prior knowledge because we have a jury finding directly contrary to that. And then we have a situation where ‑‑ The jury finding is directly contrary to that. It's a verdict. It's a verdict. The verdict says that we find is it true as an overt act that Cipriano Ramirez said he's coming over, not we. But he ‑‑ So why can't they find that? Well, they did. But if they find that he said he, then the basis, the State court appellate court's basis ‑‑ But we're not looking at the State court anymore. We're looking at the conviction. We've ‑‑ Okay. Except for purposes of our jury. Then let's look at the conviction. But the jury decides the phone call, the word used was he. That doesn't preclude the jury from inferring from all the evidence presented, notably the fact that they all arrived together, that there was a conspiracy. Well, actually it does because it precludes ‑‑ you can only bring in a statement of conspiracy if there was, in fact, an agreement at the time to conspire. And there's no evidence that he was present. Okay. You have used your time. I wanted to save some time, but I guess I don't have any. No. May it please the Court, Justin Riley on behalf of the warden. I'll touch briefly on the other issues in the case and then focus on the sufficiency of the evidence. First, Flores has claimed that the appellee didn't adequately plead the Dixon bar below. Let me just ask you right at the beginning, since the Petitioner didn't reach that subject. Is there a Confrontation Clause issue left in the case since the Supreme Court ruled last summer the Confrontation Clause applies only to testimonial statements? It's true that this statement was not testimonial. Doesn't that end it as far as that issue is concerned? We assumed for the sake of argument that Ohio v. Roberts applied. We didn't obviously reach that issue. But the claim is, in any event, barred by the Dixon bar because according to Bennett v. Mueller, the appellee pled the existence of the bar, pled that it was adequate and independent, and Flores failed to rebut that presumption. The second claim is that Bennett v. Mueller shouldn't apply. And as argument that it shouldn't apply, Flores makes some adieu about the fact that the Dixon bar is an affirmative defense and that this Petitioner is pro se. Bennett v. Mueller specifically recognized that the procedural bars are affirmative defenses and that most Petitioners are pro se, and there's nothing in this record that suggests that we should not have Bennett v. Mueller control here. With regard to the sufficiency of the evidence claim, I believe that the panel was extremely apt in their questions to the appellate's counsel. But to make it easier on the panel, there were two different juries here. One of the most important things to focus on is that Ramirez, Cipriano Ramirez, testified in his trial. He testified specifically regarding the phone call and what he said to Alma Mosqueda during the phone call. Now, his jury, the Ramirez jury, found the overt act that Ramirez told Mosqueda that he was coming over to take care of business, found that to be not true. Now, this, in terms of time, was the first overt act in the conspiracy. Obviously, if you take away one of the overt acts in the conspiracy, it changes the inferences one may draw on the rest of the evidence. And that the appellate court came to two different conclusions based on the remaining evidence is pretty much unremarkable. The he versus we. But that's not just the end of it. I mean, there is one fact that is at least or one element here that's a little disconcerting, which is that the appellate court itself appeared to recite two distinctively different inferences from the same fact in terms of the reaction to the shooting or to the firing of the shot. That is true. But I believe that's reasonable based on the fact that the appellate court did not have before it the fact that Ramirez made this call to Alma Mosqueda and said, we are coming to take care of business. That puts a whole new gloss on the remaining evidence. And that changes the inferences you can make on that evidence. If you don't have that important fact that basically, in terms of time, starts out the difference is you can draw on that will be different. That's why the fact that there were two juries and two different appellate court decisions isn't as surprising as it could be. The jury did sign or the jury foreperson did sign a verdict form stating that Cypriano Ramirez committed an overt act saying that he and not we would come over to Alma Mosqueda's house and take care of business. This doesn't change the fact that he, all the evidence, I'm sorry, let me back up. All the evidence at trial was Alma Mosqueda's testimony that Cypriano Ramirez said that he would come and take care of business. This can be read consistently with the jury's finding that he said he would come over and take care of business. There was no other evidence at trial to suggest that Ramirez said he would come and take care of business. So I believe that the jury can read this consistently or the jury can find that he said he would come and take care of business and that would be consistent with the evidence that he said we would come and take care of business because he is part of we. Are you suggesting if he just said he, the result changes? No, I'm not saying that. I'm trying to make it easier on the panel to find out. We appreciate your solicitude. That's my job. If the panel doesn't have any more questions, I'm prepared to submit the issue at this time. Thank you. You made it so easy. What can we say? The case just argued is submitted for decision. We'll hear the next case, which is German v. Lamar.
judges: Schroeder, Clifton, Schiavelli